UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MERCY HOSPITALS EAST COMMUNITIES, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16-cv-883 |
| AETNA BETTER HEALTH OF MISSOURI LLC, | ) **JURY TRIAL DEMANDED** |
| and | ) |
| AETNA INC., | ) |
| Defendants. | ) |

## COMPLAINT

Comes now Plaintiff Mercy Hospitals East Communities ("Mercy"), by its attorneys Allen D. Allred and Jeffrey R. Fink of Thompson Coburn LLP, and for its complaint against Defendants Aetna Better Health of Missouri LLC ("Aetna Better Health") and Aetna Inc. ("Aetna"), states:

### The Parties and Jurisdiction

1. Mercy is a non-profit corporation incorporated under the laws of Missouri with its principal place of business in Missouri. Mercy was formerly known as "St. John's Mercy Health System." It provides health care services and, among other operations, owns and operates Mercy Hospital St. Louis in Creve Coeur, Missouri.

2. Aetna is a foreign insurance company incorporated under the laws of Pennsylvania with its principal place of business in Connecticut.

3. Aetna Better Health is a Missouri for-profit limited liability company and operates a health maintenance organization ("HMO") pursuant to a certificate of authority issued by the Missouri Department of Insurance ("MDI"). Aetna Better Health was formerly known as "Healthcare USA of Missouri L.L.C."

4. There is complete diversity of citizenship between Mercy and Defendants.

5. Under 28 U.S.C. § 1332(c)(1), Mercy is deemed to be a citizen of Missouri, and Aetna is deemed to be a citizen of Pennsylvania and Connecticut.

6. The citizenship of limited liability companies is determined by the citizenship of their members. *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015).

7. Aetna Health Holdings, LLC is the sole member of Aetna Better Health, and Aetna is the sole member of Aetna Health Holdings, LLC. In other words, Aetna is the ultimate parent of Aetna Better Health as Aetna Better Health is a wholly-owned subsidiary of Aetna Health Holdings, LLC, which is a wholly-owned subsidiary of Aetna. Thus, Aetna Better Health's citizenship is the same as Aetna's citizenship (Pennsylvania and Connecticut).

8. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

**Facts**

10. Aetna has described itself as a national provider of managed health care services to Medicaid beneficiaries who enroll in its Medicaid health plans.

11. Defendants, through Aetna Better Health, have had a contract (the "Medicaid Contract") with the State of Missouri to provide managed health care services to Medicaid beneficiaries who enrolled in Defendants' health plan ("Defendants' Members").

12. Aetna has completely controlled, dominated, and influenced Aetna Better Health and controlled every aspect of Aetna Better Health, including Aetna Better Health's finances, policies, and practices. Aetna Better Health has had no separate mind, will, or existence of its own, but has been a business conduit for Aetna. Aetna Better Health's officers, directors, and managing staff have consisted of Aetna's officers, directors, and managing staff. Aetna Better Health has had an administrative/management service agreement with Aetna under which Aetna has handled all or nearly all of the administrative/management functions of Aetna Better Health, including, but not limited to, adjudicating and paying claims submitted by health care providers for health care services provided to Defendants' Members. Any decisions to pay health care providers, such as Mercy, for health care services provided to Defendants' Members have been made by Aetna, not Aetna Better Health.

13. Aetna has described Aetna Better Health as a department or division of Aetna and has referred to Aetna Better Health's business as Aetna's business.

14. Mercy and Defendants have been parties to a Participating Physician Hospital Organization Agreement dated November 1, 2007, as amended (the "Provider Agreement").

15. Under the Provider Agreement, Mercy agreed to provide certain health care services to Defendants' Members, and Defendants agreed to pay Mercy for such health care services in accordance with the Reimbursement Rate Schedule attached as Exhibit A to the Provider Agreement.

16. In breach of the Provider Agreement, Defendants have underpaid or failed to pay Mercy for claims (the "NICU Claims") that Mercy has submitted to Defendants for health care services covered by the Provider Agreement that Mercy has provided since July 1, 2014 to several newborns who required intensive care in the neonatal intensive care unit ("NICU") at

Mercy Hospital St. Louis and who are Medicaid beneficiaries enrolled in Defendants' health plan.

17. Since the inception of the Provider Agreement, Exhibit A, which Defendants drafted, has described five types of "Nursery Services" and provided a per diem reimbursement rate for each type of nursery services. These "Nursery Services" are described in Exhibit A as "NICU," "Special Care Nursery," "Neonatal Cont. Care," "Neonatal Subacute/Post Acute," and "Well Baby/Normal Newborn."

18. The reimbursement rate for "NICU" services is the highest reimbursement rate for "Nursery Services" and is higher than the reimbursement rate for "Special Care Nursery" services. The reimbursement rate for "Special Care Nursery" services is higher than the reimbursement rates for "Neonatal Cont. Care" services and "Neonatal Subacute/Post Acute" services. The reimbursement rates for "Neonatal Cont. Care" services and "Neonatal Subacute/Post Acute" services are higher than the reimbursement rate for "Well Baby/Normal Newborn" services. The reimbursement rate for "Well Baby/Normal Newborn" services is the lowest reimbursement rate for "Nursery Services."

19. Since July 1, 2014, Defendants have frequently not paid Mercy for "Nursery Services" at the applicable reimbursement rate for the type of "Nursery Services" that was medically necessary and actually provided by Mercy to NICU newborns. Instead, Defendants improperly paid Mercy at a lower reimbursement rate applicable to a lesser type of "Nursery Services."

20. For example, Defendants have improperly paid Mercy for certain "NICU" services at the lower reimbursement rate for "Special Care Nursery" services, for certain "Special Care Nursery" services at the lower reimbursement rate for "Neonatal Cont. Care"

services, and for certain "Neonatal Subacute/Post Acute" services at the lower reimbursement rate for "Well Baby/Normal Newborn" services.

21. Mercy has identified the NICU Claims at issue for Defendants and has repeatedly demanded that Defendants pay the amounts due and owing for the NICU Claims.

22. Defendants have refused to pay the full amounts due and owing for the NICU Claims in breach of the Provider Agreement.

23. As of January 22, 2016, the principal amount due and owing for the NICU Claims that Mercy had submitted to Defendants through January 22, 2016 was $4,114,510, consisting of: (a) $3,281,040 for claims that Defendants has underpaid; and (b) $833,470 for claims for which Defendants had made no payment as of January 22, 2016.

24. Since January 22, 2016, Mercy has submitted additional NICU Claims to Defendants, and Defendants have refused to pay the full amounts due and owing for these NICU Claims in breach of the Provider Agreement.

## Count I – Breach of Contract

25. Mercy realleges paragraphs 1 to 24.

26. Mercy performed its obligations under the Provider Agreement.

27. All conditions precedent to Defendants' obligations under the Provider Agreements have been performed or have occurred.

28. Defendants have breached the Provider Agreements by failing to pay the full amounts due and owing for the NICU Claims.

## Count II – Statutory Interest and Penalties under Section 376.383

29. Mercy realleges paragraphs 1 to 28.

30. When the NICU Claims were submitted, Aetna Better Health was a "health carrier" as defined in Section 376.383.1(6), RSMo, because it was a health maintenance organization subject to the insurance laws and regulations of Missouri that contracted to provide, deliver, arrange for, pay for and reimburse the costs of health care services provided to Defendants' Members.

31. When the NICU Claims were submitted, Aetna was a "health carrier" as defined in Section 376.383.1(6) because it was an insurance company subject to the insurance laws and regulations of Missouri that contracted to provide, deliver, arrange for, pay for and reimburse the costs of health care services provided to Defendants' Members.

32. When the NICU Claims were submitted, Aetna was a "health carrier" as defined in Section 376.383.1(6) because it was a "third-party contractor" as defined in Section 376.383.1(9) in that it contracted with Aetna Better Health, a "health carrier" as defined in Section 376.383.1(6), to receive or process claims for reimbursement of health care services.

33. Section 376.383.6 provides:

> If the health carrier has not paid the claimant on or before the forty-fifth processing day from the date of receipt of the claim, the health carrier shall pay the claimant one percent interest per month and a penalty in an amount equal to one percent of the claim per day. The interest and penalty shall be calculated based upon the unpaid balance of the claim as of the forty-fifth processing day. The interest and penalty paid pursuant to this subsection shall be included in any late reimbursement without the necessity for the person that filed the original claim to make an additional claim for that interest and penalty. A health carrier may combine interest payments and make payment once the aggregate amount reaches one hundred dollars. Any claim which has been properly denied before the forty-fifth processing day under this section and section 376.384 shall not be subject to interest or penalties. Such interest and penalties shall cease to accrue on the day after a petition is filed in a court of competent jurisdiction to recover payment of such claim. Upon a finding by a court of competent jurisdiction that

the health carrier failed to pay a claim, interest, or penalty without good cause, the court shall enter judgment for reasonable attorney fees for services necessary for recovery. Upon a finding that a health care provider filed suit without reasonable grounds to recover a claim, the court shall award the health carrier reasonable attorney fees necessary to the defense.

34. For each NICU Claim, Defendants failed to pay the full amount due and owing for the NICU Claim on or before the forty-fifth processing day from the date of receipt of the NICU Claim. Accordingly, for each NICU Claim, Defendants are jointly and severally liable under Section 376.383.6 for interest at the rate of one percent per month and a penalty of one percent per day on the unpaid balance of the NICU Claim from the forty-fifth processing day until the date of this Petition.

35. For each NICU Claim, Defendants failed to pay the full amount due and owing for the NICU Claim and the interest and statutory interest due under Section 376.383.6 without good cause.

36. Under Section 376.383.6, Defendants are jointly and severally liable to Mercy for interest and statutory penalties for the NICU Claims and for attorney's fees, costs, and expenses incurred by Mercy to recover such interest and statutory penalties and the full amounts due and owing for the NICU Claims.

## Count III – Alter Ego/Piercing Corporate Veil

37. Mercy realleges paragraphs 1 to 36.

38. Aetna is liable for Aetna Better Health's obligations to Mercy under the Provider Agreement and Section 376.383 for the NICU Claims because Aetna Better Health was the alter ego of Aetna and any corporate veil between Aetna Better Health and Aetna should be pierced and disregarded.

## Count IV – Agency

39. Mercy realleges paragraphs 1 to 38.

40. Aetna Better Health acted as an agent for Aetna for purposes of the Provider Agreement, the Medicaid Contract, and other purposes.

41. Aetna is liable for all amounts due and owing for the NICU Claims, including statutory interest and penalties under Section 376.383.

ACCORDINGLY, Mercy requests that the Court enter judgment in its favor and against Aetna Better Health and Aetna, jointly and severally, for the principal amount due and owing for the NICU Claims ($4,114,510 as of January 22, 2016); for prejudgment and postjudgment interest; for statutory interest and penalties under Section 376.383; for attorney's fees, costs, and expenses; and for all other relief to which Mercy is entitled.

Respectfully submitted,

THOMPSON COBURN LLP


By /s/ Allen D. Allred
   Allen D. Allred, MO – 26367
   Jeffrey R. Fink, MO – 44963
   One US Bank Plaza
   St. Louis, Missouri  63101
   314-552-6000
   FAX 314-552-7000
   aallred@thompsoncoburn.com
   jfink@thompsoncoburn.com

Attorneys for Plaintiff
Mercy Hospitals East Communities